Lessee of John M'Rhea *against* Plummer.

1807.

*Pittsburg,
Friday,*
September
18th.

THIS was an appeal from the decision of *Yeates* J. at a Circuit Court for *Beaver* county in *September* 1806.

It was an ejectment for a tract of land lying north &c. of the *Ohio,* taken up under the act of 3d *April* 1792. The warrant to the plaintiff was dated the 14th *April* 1792, for four hundred acres of land " adjoining land this day granted to *James* " *M'Rhea.*" This warrant, together with twenty-one others, the property of the Population company, was delivered by their agent *John Hoge* to *Jonathan Leet* deputy surveyor, who entered them in his official book. The tract of country on which these warrants fell, had been surveyed by authority of the state in 1785 or 1786, and divided into tracts for the purpose of being sold to satisfy depreciation certificates; but a sale of all the lands not having been made, the land unsold remained open to purchasers under the act of 3d *April* 1792. *Jonathan Leet* had acted as an assistant to his brother *Daniel* in making these surveys, and had *retraced* the lines in 1793. After receiving the twenty two warrants of the Population company, he went on the ground, and ran one line to ascertain the variation. That being fixed, he attached the leading warrant to the ground it called for, then *James M'Rhea's* warrant, and then *John M'Rhea's* adjoining, according to the call of the several warrants. At that time there were no settlers on the land.

*If a survey has been duly made under legal authority, and the land surveyed remains open to purchasers, a warrant coming afterwards to the hands of the deputy may be applied by him to the survey already made, without running and marking the lines anew; notwithstanding the 9th section of the act of 8th April 1785.*

It was objected at the trial, that the survey of the land in question was void under the act of 8th *April* 1785, 2 *St. Laws* 311, the 9th section of which enacts that " Every survey here- " after to be returned into the land office of this state, upon any " warrant which shall be issued after the passing of this act, shall " be made by actual going upon and measuring of the land, and " marking the lines to be returned upon such warrant, *after* the " warrant authorizing such survey shall come to. the hands of " the deputy surveyor to whom the same shall be directed; and " every survey made *theretofore* shall be accounted *clandestine,* " and shall be *void* and of no effect whatever." Yeates J. was of opinion that under the circumstances of the case the survey was not void; but the jury found a verdict for the defendant. A motion was thereupon made for a new trial, which was awarded

by his Honour; and it was from this decision that the defendant appealed. The question therefore for this court was whether the survey was void, it having been made before the warrant came to the hands of the deputy surveyor.

*A. W. Foster* for the defendant argued that a warrant of the kind in question, not being descriptive of the land, could not attach until survey, and that there never had been a survey in this case; or if the survey in 1785 were relied upon, it was void, as having been made before this warrant came to the hands of the deputy surveyor. The only valid survey known to the law since the act of 1785 is made by going upon and measuring the land *after* the warrant has come to hand. The deputy surveyor in this case was not on or near the ground after he received the warrant; and he thus committed a double breach of duty, by disregarding the plain direction of the law, as well as the explicit order of the surveyor general of the 19th *January* 1793, not to make return of any survey unless actually made on the ground. The objects of this section were two, to prevent fraud, and to give notice to persons desirous of improving. To gain the first object, the law rejects and disavows the application of a survey to any warrant whatever, if the survey was made before that warrant came to hand; and whether it was made with or without reference to a warrant to be subsequently issued is immaterial. To shew how the second object will be defeated by sustaining this survey, it is only necessary to state, that a settler would discover by the age of the marks on the ground that they could not possibly apply to a warrant under the act of 1792, and that therefore he would be secure against any title accruing under that act, as was the fact in the present case.

*Ross* for the plaintiff contended that the only object of a survey was to designate the land which was appropriated by a certain warrant; and if the lines of a tract were once run by public authority, and a warrant subsequently applied to that survey, it was impossible to say there was a violation of the law. There could be nothing clandestine in such a proceeding, because the survey was publicly authorized; there could be no fraud upon third persons, because the first warrant that came to hand would have the benefit of the survey; and the marks could not

by possibility mislead a settler of common sense, because the deputy surveyor and not the trees should be his guide. A reference to the officer would settle the question, whether or no the lands were appropriated. This is a case entirely out of the spirit of the law. It would surely be absurd, if a vacant tract were surrounded by three surveys, to argue that a surveyor must re-measure and mark the lines that were common to the vacant tract; yet this is the letter of the law; it is equally so to argue that he must repeat an entire survey once regularly made by public authority. But it is indeed questionable whether the act of 1785 applies at all to surveys under the act of 1792; on the contrary the general provisions of the law are clearly confined to the lands particularly mentioned therein, and for which the legislature contemplated so great a press of applications that it became necessary to secure each person his fair priority by the clause in question.

1807.

M‘Rhea
v.
Plummer.

Tilghman C. J. after stating the facts, proceeded as follows. It was objected at the trial that the survey of the land in question was void, having been made before the warrant came to the hands of the deputy surveyor. Judge *Yeates* was of opinion that under the circumstances of this case the survey was not void; and that is the point now to be decided.

As it is admitted that the commonwealth received the full price of the land, that there has been at *some time* an accurate survey marked on the ground, and that when the appropriation was made for the plaintiff, there was no settler on the land, nothing but very clear and positive law ought to deprive the plaintiff of his purchase.

The objection to the survey is founded on the 9th section of the act of 8th *April* 1785. I shall give no opinion at this time whether the provision of this section extends to surveys made under the act of 3d *April* 1792. I understand that in the case of *Wright's lessee* v. *Wells* tried at *Nisi Prius* at *Washington* before the late Chief Justice *M'Kean* and Judge *Yeates*, it was held that it was restrained to lands then lately purchased by the commonwealth from the Indians, and intended to be sold in a short time. But supposing that it extended to all surveys on warrants issued after the passing of that act, though the present case may fall within the *words*, it is evident that it is not within the spirit and intention of the act. The intent was to prevent

1807.

M'RHEA

v.

PLUMMER.

all persons, surveyors as well as others, from making surveys without authority, and to declare all surveys so made, absolutely void. Now the surveys of the depreciation lands were made under the authority of the state. Let us compare this case with others that have been decided, and concerning which there is no question. Suppose a surveyor receives a warrant, and the land to be surveyed on it is bounded on three sides by the lines of other tracts which he has surveyed *before*. It is not contended that he is obliged to run those three lines over again; and why? Because it would be useless trouble, those lines having been run and marked by *legal authority* before; and yet he does not comply with the words of the act, which require him to run the lines and mark them, after the warrant comes to his hand. Here then is an implied exception from the words, in order to comply with the spirit of the act. Nothing more is to be done in the case before us. What mischief can arise from this construction? It is said the actual settlers will be deceived, because they can find no marks made since 3d *April* 1792. But if they take due pains they cannot be deceived. It is in vain for any man to seek for proper information by hunting for marks on the ground, without applying to the deputy surveyor, who is obliged to keep books for the purpose of information. The marks on the ground give no satisfaction, for they may have been made by unauthorized persons. But the surveyor's books combined with the marks on the ground, will make every thing clear. The entries in the books of the surveyor would have shewn that *this land* had been surveyed; and if upon comparing the marks on the ground with the surveyor's entry, a difficulty had occurred because the marks appeared older than the entry, this would have been at once explained by the surveyor on application to him. Every prudent and honest man would naturally make such an application, before he expended his time labour and money in making a settlement. If in any case it has happened that a settler has in fact been deceived, even through his own inadvertency, I can only express my hope that the warrantee will take that circumstance into consideration, and let him have a reasonable portion of the land on moderate terms. I have no hesitation in saying that in my opinion every honest conscientious man ought so to do. But at present we are called upon to decide the law.

For the reasons I have given I see no cause to differ from the opinion delivered by Judge *Yeates*. I am therefore of opinion that the award of a new trial be affirmed.

1807.
___
M'Rhea
v.
Plummer.

Smith J. concurred.

Brackenridge J. I cannot assent to the opinion delivered by the Chief Justice. The act of 1785 I have no doubt extends to this case; and although I will not say that an omission to go on the ground and mark the lines avoids the survey, as this part of the section may be considered *directory*, yet if the survey is not made *after* the warrant comes to the hands of the deputy surveyor, it is absolutely *void;* for that part of the section is *positive*, and not directory. In this case the survey was not made *after* the warrant was delivered to the deputy surveyor.