Without giving a minute detail of the case, as has been done by the other member of the Court, it is only necessary for me to offer such additional observations as have occurred. With the reasoning adopted I perfectly concur.
On the third position, in relation to the propriety of granting a new trial, impressions and opinions are entertained *Page 284 
respecting the proper method of ascertaining boundary in this case, which forms the main ground of decision with me. In fixing the boundaries of Buchannan's grant for 1800 acres, the testimony of William Edmondson is important. In the year 1806, long before William's entry was made, Buchannan requested him to survey and mark his land. Upon going on the ground, he showed him a red oak, marked as a corner apparently about twelve months before, for the southwest corner of the 1800-acre tract; from thence he ran round the tract, agreeably to the calls of the grant, and marked the lines and all the other corners at that time. He did not see any other marks except at the red oak where they began. This red oak stands about 40 poles due west of Robert Edmondson's south-west corner. The survey, as made by William Edmondson, adjoins Robert Edmondson's upper, or north boundary, but his lower line being shorter than Edmondson's upper one, of course Buchannan's south-east corner, as marked by Edmondson, is in Robert Edmondson's upper line, west of his north-east corner; and Buchannan's land lies on both sides of the watercourse called for, though not equally on both sides. The principal question is: Are these boundaries of Buchannan's grant sufficiently established to prevail against the plaintiff? The principle of law is universally recognized, that every instrument of writing which passes an interest shall have effect, and not be considered void for uncertainty, if, by any reasonable means, the intention of the contracting parties can be effectuated. This brings us to consider the question.
First, as between the State and the grantee; and secondly, between the grantee and the third intervening claim of the plaintiff.
First. The State has its officer, the surveyor, to survey and mark out the boundaries of entries. He is a public agent, and the trustee of every man in society.[1] He acts independently of the control of the enterer, and the manner in which he shall act is directed or regulated by the legislature. He certified in his plat, that he marked the corner and lines of Buchannan's land; at least the law required him to do it, and we must presume he did his duty. Before the plaintiffs made their entry, new marks for a corner were shown, running from which the courses of the grant, land would be included sufficiently notorious in point of conformity with the calls of the grant. The general description, both in the entry and the grant, reasonably agrees with the locality of the land included *Page 285 
by these new marks. Considering the situation in which this country was placed, in relation to the renewal of landmarks, we are constrained as reasonable beings, and upon principles of law, to respect these boundaries. Previous to the Act of 1806, c. 1, § 21, there was no law in use authorizing the processioning of lands. The marks on corners were subject to continual and increasing loss by lapse of time, if not otherwise. There was no public law directing the renewal of these marks or of lines. It was scarcely to be expected, in the nature of things, that proprietors would stand by and quietly submit to loss, perplexity, litigation, and trouble from a source which they believed could be remedied by employing a surveyor to renew these corners or lines. They did so, and we know it was a common practice[1] previous to the year 1806, when a processioning law was passed. The corner made for the 1800-acre tract was made before the passage of the Act of 1806, or, in other words, these new marks on the red oak were made before that time. A little before, an Indian treaty had opened that country; which had been reserved as Indian hunting ground, and for a long time barred from access by the whites. From 1792, when the survey of Buchannan was made, until 1805, the corner originally marked might have fallen down, or the marks destroyed designedly or accidentally. It is a presumption of law, that a corner was once made; and, knowing the usage and practice of the country, it is a fair presumption in favor of right that these new marks were nothing more than the renewal of the old: at all events, as between the State and its grantee, this presumption is incontrovertible, unless the State, or some other person claiming under it, can show other older corners or lines, including lands which answer the description in the grant. Aside from these considerations, if the surveyor failed to do his duty originally, which cannot be presumed, as between the State and the grantee, the State would not be permitted to dispute boundaries, marked out by the party himself, agreeing with the calls of the grant, unless it could show a survey originally made. The neglect of a surveyor, being a public trustee, should not injure a third person. 2 Caines' C. E. 48. In the case of Lechmere v.
the Earl of Carlisle, 3 P. W. 215, it is said: "the forbearance of the trustees, in not doing what it was their office to have done, shall in no sort prejudice the cestui que trust; since, at that rate, it would be in the power of trustees, either by not doing or by delaying to do their duty, to affect the rights of other persons, which can never be maintained. Wherefore the rule in all such cases is, that what ought to have *Page 286 
been done shall be taken as done; and a rule so powerful it is as to alter the very nature of things; to make money land, and on the contrary turn land into money."
"Thus, money articled to be laid out in land shall be taken as land, and descend to the heir; and on the other hand, land agreed to be sold shall be considered as personal estate." As between individuals, they are competent to locate and survey their own lands.[2] The law delights in the settlement of boundaries.[3] In Pennsylvania, it has been determined that a claimant can have a second survey made, including different lands from the first, provided such second survey be made on the lands of the State; or, in other words, on which no other person has acquired a title, either legal or equitable.[1] The State will not be permitted to dispute the second survey, if no person be injured. So of a survey previously to an entry of the same land by the person for whose benefit the survey or plat was applied.[2] Why, then, may not marks made after the issuance of a grant, where it is correctly done, be obligatory on the State, as well as in the case where they are made even before the claimant has a warrant of survey?
When we perceive the efforts which have been made by courts in every country to prevent the destruction of contracts by uncertainty, particularly as respects locality and boundaries of land granted, no doubt can be entertained that the State will not be suffered to dispute the red oak corner.[3]
Secondly, how far is the case altered by the intervention of the interest of a third party subsequently acquired from the same source? The record shows that the locator of the plaintiffs' entry had notice.[4] As respects surveys on vague entries, this question has never been decided, nor is it intended to give any opinion on it in this case, because it is believed that, situated as the plaintiffs are, they stand in no better situation than the State, under which they claim. It is seen that the State could not claim the land from Buchannan. At the time William's entry was made, there were marked corners and lines; though lately made, they agreed with the calls of Buchannan's grant, which possessed sufficient certainty; and the enterer, honestly designing to steer clear of other men's rights which were prior in date, as well as to acquire rights of his own, ought naturally to conclude these were the renewed marks of Buchannan's grant, as they accorded with the grant which in contemplation of law he had seen. *Page 287 
Therefore he ought to have held his hand, and taken land elsewhere. According to the principles of equity, Buchannan surely ought to hold this land; we believe his legal right covers it; and it would be contrary to the numerous decisions to be found in the books, that the plaintiffs, who have only an equitable claim, should take it from him.
The judgment must be affirmed.
[1] 1 Caines, 421.
[1] See Johns. 512.
[2] Johns. 11, 12, 38.
[3] Newl. 109.
[1] Add. I. R. 250, 251; 2 Binn. 39.
[2] 1 Binn. 227.
[3] Hardin, 292; 3 Caines, 293; 1 Binn. 227-47; 2 Binn. 39; 5 Johns. 450; 2 Bay, 539; 1 Bay, 247; 1 Binn. 148; Littell, 30; Tenn. 463, 465, 469; 3 Binn. 36-8.
[4] See 3 Binn. 28, 36.