GRIFFITH (HAYFORD v.). See Cases Nos. 6,263 and 6,264.

GRIFFITH (JOHNSON v.). See Case No. 7,-386.

GRIFFITH (MACBEE v.). See Case No. 8,-660.

GRIFFITH (McFARLANE v.). See Case No. 8,790.

---

## Case No. 5,823.

### GRIFFITH v. TUNCKHOUSER.

[Pet. C. C. 418.] [1]

Circuit Court, D. Pennsylvania. April Term, 1817.

#### EJECTMENT—EVIDENCE—SURVEY.

1. A paper purporting to be "a certified extract from the general draft of certain districts, as framed by the surveyor-general, remaining in his office, under the seal of the office," is not evidence; it being only an extract, and not being a copy of an office paper.

[Cited in Lee v. Thorndike, 2 Metc. (Mass.) 318; Farr v. Swan, 2 Pa. St. 250; Gamache v. Piquignot, 17 Mo. 313.]

2. A paper offered to prove a particular fact, but which is not relevant to that fact, was rejected.

3. The proceedings of the board of property of Pennsylvania, directing a survey of certain districts, and the survey and plot returned thereon, is not evidence.

4. A connected plot or sundry tracts, made and put together by an officer in the land office, is not evidence.

5. A warrant and survey returned into the land office and accepted, in Pennsylvania vests a legal title.

[Cited in Herron v. Dater, 120 U. S. 472, 7 Sup. Ct. 624.]

6. Every presumption is to be made in favour of the regularity of a survey made by a sworn officer, returned into the land office, and then accepted, until the contrary is proved by the party who impeaches it.

7. A survey of land in the district appropriated to satisfy depreciation certificates, is not void by the provisions of the act of the assembly, passed in 1785; although the survey has not been made by going upon the land and running all the lines; provided the lines of the adjoining survey, have ascertained precisely the boundaries of the tract in question, or so many of them, as that the remaining lines can be laid down with mathematical certainty.

8. A survey made by a deputy surveyor, out of his district, is void, and the patentee cannot recover in ejectment.

9. The tract of country appropriated for the satisfying depreciation certificates, having been surveyed by authority of the state of Pennsylvania, it was not required that the deputy surveyor should run and mark the lines of a tract anew, in order to apply to it a warrant which came into his hands afterwards.

This was an ejectment for a tract of land in Beaver county, Pennsylvania. The plaintiff exhibited in evidence ten warrants, granted to Ann Duncan and nine others, on the 14th of April, 1792, which were surveyed on the 14th of February, 1795; Ann Duncan's warrant being the leading warrant, and the others adjoining thereto. These warrants

[1] [Reported by Richard Peters, Jr., Esq.]

having become vested in the Population Company, were surveyed for that company; and it was agreed by the defendant, that the title, if a good one, was vested in the lessor of the plaintiff. But the following objections were made to the plaintiff's title: First, that the survey was not made by going upon and measuring the land, and marking the lines. Second, that the survey was made before the warrants came to the hands of the deputy surveyor. Third, that the survey was made by Jonathan Leet, the surveyor of district No. 10; and the land lies in Hoge's district, No. 11. For these reasons it was contended, that the survey was void. 3 Smith's Ed. Laws Pa. 70, 310; 2 Smith's Ed. Laws Pa. 317.

The deposition of Leet, taken in the cause, stated generally that he had duly surveyed those warrants. In order to ascertain the true division line of districts Nos. 10 and 11, an order of this court was made at a former term, directing Mr. Martin to go upon the land, and to survey and ascertain the boundaries of those districts as they had been laid off according to law. His survey and return were given in evidence by the plaintiff, in which he lays down the reputed, and, as he states, the well established line between those districts; the district No. 10, commencing at about eight miles from the western boundary of the state. From this survey, the lands in question lie considerably within the district No. 10, being on the east side of Beaver creek; whereas the dividing line, as laid down by Martin, is considerably to the west of that creek. It appeared in evidence, that the tract of country where these warrants were located, had been surveyed by the authority of the state, in 1785 or 1786, and divided into tracts for the purpose of being sold to satisfy depreciation certificates; but only a part of them having been found necessary to answer that purpose, the residue remained unsold, and was open to purchasers under the act of the 3d of April, 1792. Jonathan Leet, had acted as an assistant to Daniel Leet in making those surveys, and had retraced the lines in 1793. After the ten warrants, before mentioned, were put into his hands, he went on the ground and ran one line to ascertain the variation. He also tried some of the lines of the different tracts, so as to satisfy himself that they were correct, as they had been formerly laid down. He then attached Ann Duncan's, the leading warrant, to the ground it called for, and adjoined the others in succession, amongst which was one in the name of Reigle, being the tract in question.

Witnesses were also examined by the plaintiff, to prove that the line laid down in Martin's survey, made under the order of this court, beginning eight miles from the west boundary of the state, is a well marked line, known and reputed in that country as the dividing line between Hoge's and Leet's districts. Other evidence to corroborate this testimony was given, which is noticed in the charge of the court. In order to prove the boundary line between Hoge's and Leet's district, and that Leet's district had been laid off by the surveyor general, with the approbation of the governor, to begin twelve miles east of the west boundary of the state, the defendant offered in evidence: First. A paper purporting to be "a certified extract from the general draft of the districts north and west of the Ohio and Alleghany, as framed by the surveyor general, the 7th of April, 1792, and approved by the governor the 9th of April, 1792; remaining in the surveyor general's office." This certificate was under the seal of the office. The map annexed purported to be the sections, No. 11 and No. 10. Second. Instructions given by the surveyor general, to Leet in the year 1793, which recited that he had been commissioned to act as deputy surveyor in district No. 10, beginning twelve miles from the west boundary of the state, and so directing him as to his duty, in making surveys within his district. Third. The proceedings of the board of property, directing a survey of districts Nos. 10 and 11, and the survey and plot returned by McCullough in obedience to the order, which was offered in evidence in the case of Griffith v. Evans [Case No. 5,822], was again offered. Fourth. A connected plot of different tracts, made out and put together in the land office, by an officer of that establishment, was also offered in evidence.

All the above testimony was rejected by the court. As to the first, because the paper was not a copy of any document remaining of record in the office, but an extract, which is not evidence. It is impossible for the court to say how far the parts not certified, might throw light on the mutilated part offered in evidence. It is for the court, and not the officer who certifies this paper, to determine this. At all events, the paper offered in evidence is not a copy of one in the office, and therefore the certificate is not evidence. Second. This paper is not evidence for the purpose for which it is offered; because, except that part of it which recites the substance of the commission, (and which is not evidence, as the commission itself should be produced,) it does not relate to the boundary line of the districts. It is therefore irrelevant, and on that account not proper to be given in evidence. Third. This was overruled, for the reasons assigned in the case of Griffith v. Evans [supra]. Fourth. This was decided not to be evidence, because it does not profess to be a copy of any plot of record in the office, but is the act of an officer of that department, putting together a number of tracts of land, in order to show their relative positions. That officer might have been examined as to this matter, but he cannot certify it to be a copy of any paper in the office. The defendant gave in evidence another plot of district No. 11, made under the order of this court by Martin, by the direction of the defendant's agent, which extends the north line of district No. 11, to nearer twelve miles instead

of eight, as laid down in the survey made for the plaintiff. A witness was also examined, to prove that Leet told him that he did not go upon the land in question to survey it, after the warrants came to his hands. The witness also stated, that he had examined the tract in question, and could find neither corner nor line trees, to correspond with those laid down in the survey made for the Population Company.

WASHINGTON, Circuit Justice (charging jury). The plaintiff appears in court with a regular paper title, a warrant and survey returned into the office and accepted, which, according to the law of this state, vests in him a legal title. The defendant sets up no title whatever, and resting upon his possession merely, endeavours to defend it, by insisting that the survey, though apparently legal, was in point of fact unduly made. A defence of this kind by a mere intruder, is not entitled to much favour, and although the plaintiff cannot recover if this survey be void, still every presumption is to be made in favour of the regularity of a survey made by a sworn officer, returned into the land office and there accepted, until the contrary is proved by the party who impeaches it.

The first question is, whether this warrant was duly surveyed on the ground, after the warrants came to the hands of the surveyor? Independent of the return of the surveyor, a sworn officer of the government, and the acceptance of it by the land office, without an objection having ever been made to it by caveat or otherwise; Leet the surveyor, has given his deposition, in which he states, that after the warrants came to his hands, they were entered in his books, and duly surveyed. A witness was examined, to prove that Leet informed him that he did not survey these warrants on the ground after he received them. This evidence being merely hearsay, is not competent to prove the fact, that the warrant was not surveyed on the ground, but was admitted by the court, merely to discredit the testimony of Leet, who has sworn that the warrant was duly surveyed. If, after weighing the credit of the two witnesses, the jury should be of opinion, that Leet's evidence ought not to be believed, his return of the survey and the acceptance of it by the office, fortified by the presumption in its favour that it was regularly made, not being impeached by any positive evidence, will be sufficient for the plaintiff. But, admit that it appeared in evidence that no actual survey was made on the ground, it does not follow, I conceive, that the survey is for that reason void.

The ninth section of the act of 1785, requires that every survey, thereafter to be returned into the land office, upon any warrant which should be issued upon the passing of the act, should be made by actually going upon and measuring the land, and marking the lines, after the warrant authorising the survey should come to the hands of the deputy surveyor. It then proceeds to declare, that every survey made theretofore, that is, before the warrant had come to the hands of the deputy surveyor, shall be accounted clandestine and void. But the same consequence is not declared, if the survey be not actually made on the ground, in the manner described in this section; and it would be strange, if in every case, it should be required to measure and mark all the lines of the survey, whether the same should be necessary or not, and this under the penalty of the survey being void. If the lines of adjoining surveys ascertain precisely the boundaries of the tract in question; if three or even two of the lines of a square be surveyed, so that the remaining line or lines can be laid down by protraction with mathematical certainty; can it be believed, that the legislature meant to avoid the survey, unless those lines were actually measured and marked? This is not to be presumed. In cases where accuracy in designating the particular tract of land cannot be attained without an actual running of the lines, it was certainly proper to require that they should be run and marked on the ground. Infinite confusion would arise, were a different course permitted. The direction in this section to the deputy surveyor, was clearly intended for the benefit of the warrant-holder, by requiring so accurate a description of the boundaries of his land, as to prevent interferences with the adjoining tracts. But, if every object of the law can be obtained without running all or any of the lines, it is going beyond the words, and, I clearly think, beyond the plain intention of the legislature, to declare the survey void, because an act altogether unnecessary was not performed. This has more than once been declared to be the opinion of this court, and it has the clear authority of the supreme court of this state, in the case of McRhea's Lessee v. Plummer, 1 Bin. 227, to support it. In this case, too, the argument that an actual survey is proper, for the purpose of giving notice in pais of the boundaries of the land, is most satisfactorily answered. The entries in the books of the surveyor, and the plots returned into the office, together with such marks as are to be found on the land, will always afford full information to actual settlers and others, of the real boundaries of each survey.

Now, what are the facts in this case? The tract of land in question, as well as all the others, appended to that of Ann Duncan, were surveyed by Jonathan Leet, as assistant to his brother Daniel, under the authority of the state, in the year 1785 or 1786; after these warrants came into his hands, Jonathan Leet went on the ground, and ran so many of the lines as to satisfy himself that a second actual survey was unnecessary. No evidence has been given to show that he was mistaken in this respect; for although one witness has declared, that he searched for the

lines of this tract and could find no marks to distinguish it, he admits that he had neither chain nor compass to assist him, and that no person on behalf of the lessor of the plaintiff was present, or was even called upon to show the lines and marks. It can never be endured, that the acts of a sworn officer, approved by his superiors, should be impeached by the unsuccessful examination of officious and unauthorised individuals. The order of this court put it in the power of the defendant to have this point ascertained in a fair and proper manner, of which he did not chuse to avail himself. But, in opposition to the unsatisfactory evidence of the witness just noticed, is that of Enoch Marvin, who says, that he traced the outward line of all these surveys from Ann Duncan's down to that now in controversy, and found the corner trees of each survey As to the objection, that the actual survey of this tract of land was made before the warrant came to the hands of the deputy surveyor, it is conclusively answered and obviated by the decision in the case of McRhea's Lessee v. Plummer, in which we entirely concur. In that case, it was decided that the tract of country on which those warrants fell, having been surveyed by authority of the state for satisfying depreciation certificates, but which was afterwards open to appropriation warrants, coming afterwards to the hands of the deputy surveyor, might be applied by him to the survey so made, without running and marking the lines anew. No further observations need be made on this objection.

The next and last objection to the validity of this survey is, that it was made in district No. 10, whereas the land lies in district No. 11. If the fact be so, there is no doubt but that the survey is void, and the lessor of the plaintiff cannot recover. Whether the fact be so or not, is a question for the jury to decide on the evidence. The fourth section of the act of 3d April, 1792, declares, that the surveyor general shall, with the approbation of the governor, divide the lands thus offered for sale into proper and convenient districts, in such manner as he may think expedient, so that the boundaries of each district, either natural or artificial, may be known; and shall appoint a deputy surveyor for each district. Whether these districts were laid down by the surveyor general, on any diagram or plot of that country remaining in his office, is unknown to the court or jury, as no evidence of that fact has been given. But, if there was any such paper division made, still it is presumable, independent of all positive evidence, that the lines of division were also run and marked on the ground, for the information of purchasers, as well as of the several deputy surveyors, so that, in the words of the law, "the boundaries of each district, either natural or artificial, might be known."

The defendant's counsel, in their argument, have assumed the fact that there was a paper demarkation of those districts of record in the land office, and insist that the nonproduction of that species of evidence is fatal to the plaintiff's title. But to this argument there are two answers, which seem to the court to be conclusive. The first is, that there is no evidence that any such paper ever did exist, and that if it did, the defendant might prove it, although its nonexistence cannot so easily be proved. The next is, that if there is in the land office any paper which marks the original boundaries of these districts, inconsistent with those existing on the ground, it is for the defendant who impeaches this survey, to produce it, and not for the plaintiff who rests upon his survey made by a sworn officer, returned into the land office and there accepted, as affording prima facie evidence that it was regularly made. What then is the evidence of the dividing line between districts No. 10 and No. 11? The depositions of Hoge, the deputy surveyor of district No. 11, and of Jonathan Leet, the deputy surveyor of No. 10, corroborated by their official acts, establish, so far as they are believed, the line laid down by Martin as the division line; which line is to the west of Beaver creek, somewhat more than eight miles from the western boundary of the state. The official acts of these surveyors, appear in the connected plots which they respectively made of their surveys, each of them running up to that line as the acknowledged limit of his district. These connected plots were returned into the land office, and there accepted, without an objection having ever been made to them by the surveyor general; the man, whose particular duty it was to see that his deputies did not transgress the limits of their districts, and who, of all others, best knew what those limits were. Martin, who ran the dividing line under the order of this court, and Mr. Williams, both of whom have for many years resided in that part of the country, have sworn that this is the reputed, the well known, and established line of division, between those two districts. In addition to this testimony, Howel's map of this state has been given in evidence, which lays down the line considerably to the west of Beaver creek. On the other side is another survey made by Martin, at the instance of the defendant, which extends the northern line of these districts as contended for by the defendant, nearly twelve miles from the west boundary of the state; and if the defendant had directed him to extend it twelve miles further, it would have been the duty of the surveyor, acting under the order of this court, to have run that distance. But this of itself proves nothing. The survey and plot which accompanies it, are merely intended to exhibit on paper the dimensions, and relative position of the land, so that the evidence to prove its agreement or disagreement with the boundaries, as asserted by each party, may be the better understood. The deposition of Hugh McCullough was also read, who states, amongst other things, that he made a survey

of these districts, under an order of the board of property, made in the year 1815; in which he ran twelve miles from the west boundary of the state, as the northern line of Hoge's district. But, as the court refused to suffer that order or the survey made under it to be given in evidence, upon the ground that, as between these parties. they were ex parte and in no manner binding upon them, the evidence of the person who made that survey, as to the lines which he ran, can prove nothing in this cause. He has given no evidence, as to his own knowledge of the division line. He speaks, it is true, of some marked trees which he found on the line running south to the Ohio, twelve miles from the west boundary of the state, as do also Martin and E. Evans, on the line which the former ran, at the distance of eleven miles and one hundred and seventeen perches from the west boundary. But, whether these marked trees designate the district line, or merely the lines of the different surveys adjoining that line, is not explained by any one of the witnesses. Upon this evidence the jury must decide.

Verdict for plaintiff.

[The first verdict for the plaintiff was given in Case No. 5,822.]