The opinion of the court was delivered by
Gibson, C. J.
Although we may not concur in the opinions of the judge of the District Court, in regard ta the identity of the cause of action in the various suits between the parties, we are of opinion the legislature intended to refer the inquiry in this respect to his own discretion. The words of the act, undoubtedly lead to such a conclusion; and a reasonable presumption arises, from the nature of the case, that it was supposed none would be so *77 able as he to determine whether he stood in a relation to tlie parties which would disqualify him as a judge. His order in a cause actually transferred, would indisputably be conclusive, because, he might privately have been of counsel or directly interested in a way known only to himself, and the presumption, therefore, would be that he had acted on a knowledge of facts perfectly proper to influence his determination, but which the party to be affected might be unable to prove; and if his determination were conclusive in the one way, it would be unreasonable if it were not so in the other.
The next bill of exceptions brings into question the right of a party to introduce his case by cross examining the adverse party’s witnesses, and before he has opened it to the jury. It is laid down that in cross examinations, great latitude is allowed in putting questions; but that relates to the manner and not to the matter. A witness may not be cross éxamined to facts which are wholly foreign to the points in issue, (and I would add to what he has already testified) for the purpose of contradicting him by other evidence. And here I take occasion in broad terms to dissent from the doctrine broached in Mr. Phillips’s Law of Evidence, (211,) that a witness actually sworn though not examined by the party who has called him is subject to cross examination by the adverse party: and that the right to cross examine is continued through ail the subsequent stages of the cause, so that the adverse party may call the same witness to prove his case, and for that purpose ask him leading questions. In respect to the first of these two propositions, Mr. Phillips himself explictly and truly states, that the use of the cross examination is to sift the evidence and try the credibility of the witness, but in this view it would be palpably absurd when applied to a person who had given no evidence at all. And in regard to the second, the law will not inflexibly infer that a witness is a willing one merely because he is produced by the party who thinks his evidence material. Such an inference would be neither practically nor theoretically true. It is not to be presumed that a party is in a condition to prove his case by the testimony of his friends; on the contrary, he is under the necessity of resorting to those who may happen to know something of the transaction, and these are for the most part just as likely to be his enemies. And .the bias supposed to be created by being called to testify on one side, is too slight to serve as the foundation of a rule unlimited in its extent. Certainly no bias is to be presumed after the witness has been called by both parties, as he undoubtedly is when produced a second time, not for the legitimate purposes of a cross examination, but to testify to new matter on the adverse part; at least, it would be unreasonable to raise such a presumption against a party who is the first to use the testimony of the witness only because he is compelled to do so by a necessity arising out of the order of proof.. In ordinary cases the witness may be cross ex *78 amined by the party adverse to him, whose witness he is at the time, and even then only to discredit him or to bring out something supposed to be withheld; but under special circumstances, such as an apparent unwillingness to testify frankly and fully, the court may at its discretion, suffer the inquiry to take the shape of a cross examination without distinction as to the party by whom the witness is called; and for myself, I would not without further consideration, pronounce the exercise of the discretion depending as it does on circumstances which cannot be fully made to appear in a court of error, to be a legitimate subject of a bill of exceptions. If then a party may not prove his case by evidence extracted on a cross examination after he has proposed his case to the jury, a for- " iiori, he may not do so before.
The other bills of exceptions relate; first, to evidence of misconduct by the testimony of the arbitrators themselves; secondly, to evidence of acts done before the submission, which are said to have tended to mislead the arbitrators; thirdly, to evidence of the defendant’s title, to show that the award was inconsistent with the merits.
’As to the first, it was conceded during the argument, that arbitrators are incompetent to prove misconduct in themselves. But the evidence is said to have been proposed with a view to disclose misconduct only on the part of the. plaintiff. But the species ofimisconduct charged is social, and involves the conduct of the arbitrators as well as of the party, so that.the former could not establish it without implicating themselves. The charge is, that the arbitrators, or some of them, in the absence of the defendant, accompanied the plaintiff to his home and conversed with him on the subject of the nuisance, permitting him to point out from a view of the dam and races, the injuries which he was supposed to have suffered. . This, if true, was collusion, but the arbitrators .being "equally in fault with the parties, were incompetent to establish it.
Under the next head, it is contended the defendant should have been permitted to show that the plaintifi' had sunk his tail race deeper at the forge than in any other part, to give to the forge wheels the appearance of being incumbered with back-water; and that the race was permitted to remain in that state till after the supposed injury was viewed by the arbitrators. But whatever may have been the effect of this, it is sufficient that the state of the race complained of, was produced before the alleged nuisance was submitted to the arbitrators, and it could, therefore, not have been done with a view to deceive. But all dánger might have been avoided by the party whose business it was to put the arbitrators on their guard, and besides there is no. allegation that they were actually deceived.
Finally, the defendant offered to exhibit his" title to show that the plaintiff could not have had merits. An award may undoubtedly be avoided for a plain mistake in matter of fact or of law in *79 judging of the case as it appeared on the evidence laid before the arbitrators. Here, however, the plaintiff did not propose to. show the case as it stood on the evidence and to point out a mistake in any part of it, but to make out his case afresh', without regard to the evidence which he had before given; and thus to try over again the matters submitted on the original merits. Were he suffered in this manner to throw open the award, he might perhaps succeed notwithstanding the arbitrators had decided justly and properly on the fact established by the evidence; which would be palpably unreasonable and render awards of but little value. The law is, however, that the mistake, to be available, must be shown to be in the judgment of the arbitrators on the premises; and as nothing of that sort was alleged, it is clear that the evidence was properly rejected.
Judgment affirmed.