| 8 | 147 |
|---|---|
| 144 | 561 |

</div>

<div align="center">

## Cox *v.* Couch.

</div>

Where land is described in a deed of conveyance, or in official surveys, by courses and distances, and also by calls for adjoiners: the latter, where there is a discrepance, invariably govern.

Natural or artificial landmarks, descriptive of lands conveyed, constitute the true boundaries; and the courses and distances, if added, serve but to point towards the place.

Where land sold was described in the articles of agreement by calls for adjoiners only; but to the said calls in the articles, the grantor added the courses and distances in the deed tendered, one of which, varying from the line on the ground, *seemed* to carry the grant into the land of an adjoiner: *Held*, that the

grantee, had he accepted the deed tendered by the grantor in execution of the contract, would have become the legal owner of all the land included within the calls for adjoiners.

*Held* also, that the vendee, because of the variance and extension of the line as aforesaid, could not insist that the vendor had not title to all the land he professed to convey, when he had title to all he sold and was to be paid for; and that he was not therefore entitled, on any such pretext, to withhold a part of the purchase-money. And it seems that the principle would have been the same, had the course and distance fallen short of the actual boundary.

In error from the Court of Common Pleas of Huntingdon county. *May* 22. This was an action of debt on articles of agreement under seal, brought by William Couch and Andrew Couch against Edward Cox, to recover a balance of the purchase-money of two tracts of land, due under said articles. It appeared by the articles of agreement, dated the 19th of February, 1842, and executed by William Couch and Andrew Couch, the plaintiffs, and Edward Cox, the defendant, that the said William and Andrew Couch bargained and sold two tracts of land situated in Barree township, Huntingdon county, to the said Edward Cox; one of them lying on and adjoining the waters of *Stone Creek*, and adjoining lands of J. Cunningham, D. Peightal, and William and Andrew Couch, and containing *forty-five acres and eleven perches*, be the same more or less; and the other tract lying on the "*Warrior Ridge*," adjoining lands of Joshua Green, D. Peightal, R. Logan, and J. Cunningham, containing *forty-nine acres and one hundred and fifty-five perches, more or less*, with the buildings and improvements thereon erected, for which Edward Cox agreed to pay them the sum of $1,223, in the manner following: $623 thereof on the 1st of April, 1842; $300 on the 1st of April, 1843, with interest until paid; and the remaining $300 on the 1st of April, 1844, with interest until paid. The deed for the lands, under the articles, was to be made to Cox when he made the first payment; and the two remaining payments to be secured by the lands, and possession to be given to Cox on the 1st day of April, 1842. Cox, it appeared, went into possession of the said tracts, and between the 8th of April, 1842, and June 7th, 1843, paid $984 of the purchase-money. The balance he refused to pay, because, as he alleged, the deed tendered by William and Andrew Couch, the vendors, did not contain all the lands purchased by him, under the articles of agreement, which described the tracts by adjoiners, but not by courses and distances. But to the description of the tracts in the articles by adjoiners, the grantors had added courses and distances in the deed tendered. The description

of the two tracts in the said deed, which was dated the 20th day of May, 1844, was as follows:—

"All those two tracts or parcels of land as described in the articles of agreement, and situated on Stone Creek, in Barree township, Huntingdon county, beginning at a buttonwood; thence by lands of Josiah Cunningham N. 1 S. 50 perches to a post; thence N. 18½ W. 109.5 perches to a post; thence by Peightal's land S. 68 W. 6 perches to a post; thence S. 45½ W. 24 perches to a post; thence N. 66 W. 13.5 perches to a pine stump, Mifflin and Harrison's land; thence —— one and —— degrees E. 84 perches to a post; thence S. 21¾ E. 54 perches to a post; thence N. 10 E. 11 perches to a post; thence N. 81 E. 39 perches to a post; thence S. 74 E. 6 perches to the place of beginning; containing 45 acres and 11 perches, be the same more or less. The other parcel, beginning at a black oak by lands of Robert Logan; thence N. 15½ W. 84 to a post; *thence* N. 88 E. 75 *to a white oak, on Joshua Green's line; thence* S. 15½ E. 60 *perches to a post;* thence along road S. 15 W. 42 perches to a post; thence 33 *degrees* 13 *perches* to a post; thence S. 33 E. 12 perches to a post; thence S. 10 degrees 14 perches to a post; thence by Peightal's land N. 48 W. 75.5 to the place of beginning; containing 49 acres and 147 perches, as supposed, be the same more or less."

One of the difficulties alleged, arose out of the description in the deed of the last, or "*Warrior Ridge*" tract, *on Joshua Green's line.* It appeared that there were two lines at that part of the tract marked on the ground: "*the one,*" as stated in the charge of the court, "*said to be* N. 72 E. 74 *perches, and the other* 88¾ E. 76 *perches.*" By adopting the line N. 72 E. 74 perches, it would include about *five acres more* of land; but it was admitted, that this was not the true line of division between Joshua Green and the land sold to Cox. *The deed described the line,* N. 88 degrees E. 76 *perches, to a white oak on Joshua Green's line.* The defendant alleged that his vendors, the plaintiffs, represented to him that the *five acres* of an interference, were a part of the land sold by them to him; and to sustain this allegation, he called James Livingston as a witness, who testified, that he was at one time about to purchase the two tracts of land, sold by William and Andrew Couch to Edward Cox; that he went with Couch to the Ridge tract to see this line; that Couch showed him the line; that it was the same line which included *the five acres,* thrown out by the line describing the boundary in the deed; that the lines did not agree; that soon afterwards he saw Couch, who told him that he had sold

that land to Edward Cox.    On this point of the case, the following
testimony was given :—

Joshua Green, affirmed :—" I am well acquainted with that five
acres of disputed land, and with some of the particulars of it rela-
tive to this case.   Some time after the Couch's had sold to Edward
Cox, I got information. that they had been surveying, and that it
run into mine.   I went to Andrew Couch and spoke to him about
this interference—do not remember his reply.   He went and got
the draft and showed ·that to me.   I found the line running up the
ridge till it came into my land—called for eighty-two perches long.
That was altered from eighty-two to sixty-two.   I asked Andrew
Couch who had made that alteration on the draft.   He said his
brother William had made that alteration from eighty-two to sixty-
two, finding that it would run into my land.   Some time after
this—I am not able to say whether the Couch's or Mr. Cox got
Aquila Green to come and survey this five acres of disputed ground.
Some person came for me to go and show where my line went.   They
then ran round this disputed piece, and Aquila Green made a calcu-
lation of the quantity.   It was five acres and eight perches.   Then
Andrew Couch insisted on Aquila Green running round the balance,
leaving that five acres out, for the purpose, he said, of ascertaining
whether there would not be the amount of land sold to Cox yet in
the survey.   They started on the line between Cox and Cunningham,
down the ridge.   I continued with them down to the big road that
leads from Couch's to Manor Hill, and there left them.   [Draft
shown.]   I cannot say certainly this is the draft Couch showed me.
I presume it is.   I do not know in whose hand-writing the alteration
is.   My impression is, the line laying off the five acres was not on
it at that time.   There are two lines on the ground, marked as laid
off on this draft.   I do not recollect the course of the upper line.
My own is either S. or N. 88 W.   The loss of five acres would
affect it considerably.   On this upper tract the only land fit for
cultivation is on the north-east corner, next to mine.   There is
only a part of this five acres fit for cultivation—not all of it.   I
suppose not more than the half of the five acres, if that—is a
hollow through it.   On the east side of the hollow is pretty good,
on the west side stony.   The good part adjoins Cox—good land—
is limestone nature mixed with sand.   What runs up into my land
is more of a limestone nature than the other part of it.   Would,
taking the five acres off, leave but a small field.   I could not sup-
pose, including what is in the five acres, or what is good of it, that
there would be a field of so much as ten or twelve acres.   At the
east end the timber is small.   The timber became better on the

other end—rail timber would, in my opinion, be very valuable to Mr. Cox. The yellow pine is not very valuable there—it is principally yellow pine. *My line runs just along the south edge of the sink-hole. The eighty-two perch line runs pretty much into the sink-hole. The line disputed is twenty-two perches from the sink-hole.*"

Draft spoken of, shown to the jury.

Cross-examined:—" My land includes that five acres; calling for that lower line bounds me. The one that runs into my land, was made since my line was made. The interfering line, I should suppose, was forty years old."

Jacob Cresswell, sworn:—"About the last of March, 1845, I was taken there by Mr. Cox. I ran the lines; we ran the line from the buttonwood N. 1 E. fifty perches; thence by a number of courses and distances (omitted here), to a, post which *brought us to the line of Green. I found the marks of that line both ways, on the bearing* N. 88¾ E. *I run the upper line, including the five-acre piece,* N. 72 E. 74 *to a post; then run* S. 15½ E. *At twenty-two perches intersected Green's line, before mentioned—crossed the sink-hole.* Continued the line sixty perches further, to a post corner; thence S. 15½ W. 42 perches, S. 33 W. 13 perches, S. 33 E. 12 perches, S. 10 W. 14 perches, where we intersected the line of Peightal two or five rods from the sixty corner. I do not now remember what I ran by; I had drafts of the Thomas Gallagher, Peightal's land, and Cunningham's draft. I ran by the Cunningham deed, I think. By Cunningham's deed, it runs across the creek. We took nothing west of the road."

Deed tendered, shown. "The deed corresponds with my surveying till it comes to the end of the line S. 21¾ E. 54 perches. There the deed leaves my survey altogether. Then the deed reads it 10 E. 11 perches, to a post. This deed will not come by twelve rods of the creek. I made this draft from the courses and distances in the tendered deed; that the buttonwood tree, called for in the deed, was on the creek, as near as corner-trees are, generally, on a stream; and that Cox, the defendant, was in possession to the creek."

It also appeared that William and Andrew Couch, the plaintiffs, purchased the two tracts sold by them to the defendant, from J. Cunningham, by deed; that the tract lying on Stone Creek, and beginning at a buttonwood, as held by the said Cunningham, contained fifty-eight acres and one hundred and seventeen perches, which he sold to William and Andrew Couch, the plaintiffs; and that *they* sold but forty-five acres and eleven perches of this tract

to Cox, the defendant; that of the fifty-eight acres and one hundred and seventeen perches purchased by them from Cunningham, thirteen acres and one hundred and sixteen perches lay over the creek, which they did not sell to Cox, nor ever offered to sell to any one; that they said they would not sell the same to any man, as they wanted to keep that part of the said tract for the use of the mill; and that Cox claimed these thirteen acres, &c., under the agreement. The testimony showed that Cox went into the possession of the land to the creek; and one witness stated that Cox told him, in 1844, that he had bought to the creek and up the road, and that that was all he claimed. Cox, the defendant, alleged at the trial, that the deed tendered by the plaintiffs did not include the land to the creek; and Jacob Cresswell, whose testimony has already been given, said that the courses and distances in the deed did not extend to the creek.

It also appeared, that the defendant, in addition to the alleged deficiency, refused to pay the balance of the purchase-money, because, under the description of the "*Warrior Ridge*" tract, in the deed, by courses and distances, one of the said courses and distances ran into the lands of one of the adjoiners, Joshua Green; and that therefore the plaintiffs, the grantors, had no title to all the land conveyed by the deed. There was no draft in, or attached to the reporter's paper-book.

*Defendant's Points.*—The defendant's counsel requested the court to charge the jury as follows:—

1. That if the jury are satisfied from the evidence that the deed tendered was not according to the boundaries by which the vendors sold the land described in the articles of agreement, the defendant was not bound to accept it, accompanied with no offer on the part of the vendors to make such a deduction from the price of the land sold, as would be a compensation to the vendee for the land sold to him, but not embraced in the deed tendered.

2. That if the jury are satisfied that the deed tendered was imperfect and erroneous in its description of the land intended to be conveyed by it, the defendant was not bound to accept it, and pay the money which may be justly claimed under the contract upon the tendering of a perfect deed for the land sold, and for which the vendors were able to make a good title.

3. That if the defendant was not bound to accept of the deed tendered, then the plaintiff cannot support this action.

4. That if the jury believe the deed tendered does not embrace and convey all the land sold, for which the plaintiffs were able to

make title, then the defendant was not bound to accept it, and this at least cannot be rebutted.

*Answers.*—"1st. With respect to a part that defendant had not the ability to make a title for, and the purchaser has taken possession of the balance of the land, this principle would not apply. We have stated our opinion on this point as applicable to this case, in our general charge.

"2d. Answered as requested.

"3d. We answer as requested. If the deed tendered on the principles we have stated in our general charge was such as the defendant was not bound to accept, the plaintiff cannot support this action.

"4th. We have also answered this in our general charge as requested."

The defendant excepted to the charge; and the jury having returned a verdict for the plaintiff, the defendant took this writ of error.

Errors assigned to the charge of the court: 1. By saying to the jury as follows, viz:—" The deed describes the line N. 88 E. 75 perches. Now, if this is the true line of division between Green and the land sold, it would be a compliance with the agreement, for the agreement only calls for adjoining Joshua Green; and if they had by their deed described the boundary by the other line, and it was not the true boundary, Cox could not hold it or *claim on account of a deficiency.* Couch was only bound to convey up to Green's land, on that part of the tract; and the words more or less are in an agreement to meet such deficiency, or an excess, where the parties contracted for.a gross sum in consideration."

2. By saying, "*The article of agreement does not show that he had undertaken to convey to this line, but to the line between Green and the Ridge tract, be that where it may.*"

3. The court erred in their instruction to the jury, in relation to the construction of the articles of agreement on which the action was founded; and in relation to the facts bearing upon the question—by what line or boundary the sale and purchase were made—in the whole current of their remarks.

4. The court erred in their instruction to the jury, in relation to the deed tendered by the vendors, and especially by saying, " If it embraces all the land agreed to be sold on this lower tract, then your verdict will be for the plaintiff;" and again by saying, "Where the purchaser has gone into possession of the land, and the vendor has made a title for all that he had sold which he had

ability to make a title for, and that a part is taken or held by a superior title, that the vendor should offer to make the deduction when he tenders the deed, and before suit brought. But that the abatement in price, where the defendant is entitled to it, may be made, and justice done to the party, on suit brought for the purchase-money, by the jury who try the cause."

5. The court erred in their answer to the first point put by the defendant's counsel.

*Miles* and *Gwin*, for plaintiffs in error, cited Pur. Dig. 257; Anderson *v.* Nesbit, 2 Rawle, 114; 4 S. & R. 493; Galbraith *v.* Galbraith, 6 Watts, 112; 8 S. & R. 287; 8 W. & S. 172.

*Wilson* and *Campbell*, contrà, cited Large *v.* Penn, 6 S. and R. 136; Smith *v.* Hutchinson, 6 Bin. 103; Lomis *v.* Reutter, 9 Watts, 517; Glen *v.* Glen, 4 S. & R. 488.

*June* 8.    GIBSON, C. J.—It is a principle of construction, that where land is described by courses and distances, and also by calls for adjoiners, the latter, where there is a discrepance, invariably govern; and it is as applicable to conveyances as it is to official surveys.    By reason of imperfection of instruments, as well as inequalities of surface and carelessness of assistants, extreme accuracy is not to be attained by the compass and chain; while, on the other hand, calls for natural objects, or, what is much the same, known and established lines of contiguous tracts, admit of perfect certainty.    When a vendor, therefore, conveys by established landmarks, the subject of the grant will neither overrun nor fall short of them.    They form the true boundary, and the courses and distances serve but to point towards the place.    Apply this principle to the case below.    The tract was described in the articles of agreement by calls for adjoiners, but not by courses and distances at all; and of all the land within the calls, the grantee would have become the legal owner, had he accepted the deed which was tendered in execution of the contract.    But to the calls in the articles, the grantor had added courses and distances in the deed; one of which, varying from the line on the ground, would seem to carry the grant into the land of an adjoiner: and for this the vendee insisted that the vendor had not title to all the land he professed to convey.    But he had title to all he sold and was to be paid for; and the consequence would have been the same, even had the course and distance fallen short of the actual boundary.    The

vendee was, therefore, not entitled to withhold a part of the purchase-money on any such pretext. As the principle is decisive of the cause, it is unnecessary to consider the bill of exceptions to evidence.

Judgment affirmed.