# J. H. FERGUSON v. MATTHEW BLOOM.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF CLEARFIELD COUNTY.

Argued April 21, 1891—Decided November 9, 1891.
[To be reported.]

| 144 | 549 |
|-----|-----|
| 183 | 84 |

| 144 | 549 |
|-----|-----|
| 203 | ¹558 |

| 144 | 549 |
|-----|-----|
| e206 | ¹282 |
| e206 | ¹291 |

| 144 | 549 |
|-----|-----|
| 222 | ¹481 |

1. Where several tracts of land were originally surveyed in a body or block having only external lines, they must be located as a block; and the courses of the open interior lines will be controlled by the monuments found on the external or block lines, rather than by the official returns of survey.
2. Where a tract, alleged to be part of such a block, has marks of the original survey upon its lines sufficient to fix its place on the ground, and some of these marks are peculiar to the tract and not common to the other members of the alleged block, or to the block lines, a separate survey for the tract is to be presumed, and the rules applicable to individual surveys are to be applied.
3. If a corner or line of such a survey cannot now be found on the ground, the legal presumption that the lines of the survey were run as they are returned, resting on the established monuments of the original survey, will complete the enclosure.
4. The north and west lines of the Steiner, as found on the ground, are not common to the alleged block in which it is sought to place it, but are peculiar to that tract, and, in connection with the east line, fix three lines and three corners of the quadrilateral survey. The enclosure is to be completed by the rules applicable to separate surveys.

Statement of Facts.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 129 July Term, 1890, Sup. Ct.; court below, No. 57
September Term 1885, C. P.

On May 22, 1885, James H. Ferguson brought ejectment
against Matthew Bloom and others, his tenants, to recover a
parcel of land containing 19 acres and 38 perches, in Ferguson
township.   Issue.

At the trial on May 15, 1888, a verdict was returned for the
plaintiff.   The judgment entered on this verdict was reversed,
with a venire de novo, on October 7, 1889 : See Bloom v. Fer-
guson, 128 Pa. 362, where plans appear showing the official
returns of the surveys involved, and the actual work of the
deputy surveyor on the ground.

The cause was tried a second time on May 20, 1890, and at
the close of the testimony, the court, KREBS, P. J., charged the
jury in part as follows :

Now, gentlemen of the jury, the plaintiff in this case claims
to recover the land in controversy as a part of the John Steiner
survey.   The defendant claims to recover it, or maintain his
title to it, alleging that it is not a part of the John Steiner
survey, but that it is a part of the Abram Scott survey.

It is admitted on the one side and on the other that plaint-
iff has a paper title, a legal title, to the land, or that portion of
the land adjoining the disputed piece and covered by the John
Steiner survey, and that if the land in dispute is in the John
Steiner survey, that his paper title, his legal title, or his deeds,
would cover that ground.   It is admitted, on the other hand,
that the defendant has a good paper title, by deeds of proper
conveyance, to that portion of the Abram Scott survey which
would cover the ground in dispute, if the line is as claimed by
the defendant.   So that the principal contention, in the out-
start of this case, between these parties, was as to the true
method of locating the division line between the John Steiner
and Abram Scott surveys.                    .

It is admitted, or if not admitted, an undisputed fact at least,
that the four tracts, the John Steiner, Abram Scott, Matthias
Slough, and John Frey, are parts of a larger block of sixty-four

surveys, thirty-nine of which are located on the draft before you; and that this is shown not only by the certified copy of the original application for these surveys, but by a certified copy of the purchase-money blotter or voucher, and also by the warrants for these surveys in the land office, as I understand, all being dated the 19th of September, 1793. This would indicate conclusively that these four surveys are part of this larger block of surveys; and, as was said to the jury on the former trial, that in the location of a block of surveys each and every mark upon that block pertinent to these surveys would have to be taken into consideration in the location of lines in the surveys in dispute.

It now appears, more clearly than it did on the former trial, that the deputy surveyor in 1793, in locating this block of surveys, if not in every instance, in a majority of instances located them by running lines through the block, at right angles, at every other tier of blocks, omitting to run the lines and mark them on each alternate tier of blocks; that the lines between the Abram Scott and John Steiner, and between the Matthias Slough and John Frey, running northwest and southeast, or nearly north and south, were not marked; and that also, the lines between the John Frey and John Steiner, and Matthias Slough and Abram Scott, running southwest and northeast, were not marked. So that we have the fact, as appears by the testimony in this case, that no line was marked from the white oak of the John Steiner and Abram Scott, on the south, to the sugar of the John Frey and Matthias Slough, on the north; neither was any line ever marked or run between the white pine of the Jacob Martin and John Steiner on one side, to the gum of the Abram Scott and Matthias Slough on the other side.

If these lines had been run and marked on the ground, as returned by the surveyor into the land office, there would probably be no difficulty in determining by those marks where that location was. There is still enough timber in that country, probably, for determining it; but the call is for a post at the centre of these four surveys as a common corner, and in the absence of all marks between those four points, those four recognized and established corners, you have to determine all the lines that are not run and marked on the ground by the

Charge of Court below.

deputy surveyor in 1793. These four surveys, then, being part of this larger block, and these lines through this block being run in alternate sections, I believed on the other trial, and I am not now convinced that I was not right, that every mark on those four surveys, as well as other marks upon that block, that pertain in any respect to the location of these surveys, ought to be considered in locating the division line between the John Steiner and Abram Scott, and John Frey and Matthias Slough. In that belief, I instructed the jury to find that if they found that by running a straight line from the white oak to the sugar the land in dispute was in the John Steiner survey, then they should find for the plaintiff; if it was in the Abram Scott, then they should find for the defendant; and, as it was manifest that it was in the John Steiner, the jury found in favor of the plaintiff.

Now, gentlemen of the jury, as I said before, I am simply stating these facts, in order that every fact may be before the Supreme Court, if the case is again reviewed.

It is stated, in the opinion delivered by Justice WILLIAMS, that there are three corners, the white pine, the hickory, and the white oak, of the John Steiner, on the ground; that the lines from the white pine to the hickory, and from the hickory to the white oak, are recognized; and that there is also a line, a half mile or more long, starting from the white pine and running in the direction of the gum. Gentlemen of the jury, I do not think that that is a correct statement of the fact, as it appears in this trial. The evidence as to the line of the John Frey is that the surveyor in 1793 run from a hemlock, the north corner of the John Frey, a straight line, until he passed eleven and a half rods over the line that would run from the white pine to the gum. If a straight line was run between those two points, and then turning at right angles to his left, he would have struck the line of the Jacob Martin and John Steiner eleven and five tenths rods south of the white pine. Mr. Read, the surveyor, testifies, as I remember his testimony, and if I misstate it counsel will correct me, that at that point he found a spruce corner. No spruce corner is returned on that survey for the John Frey, nor is it indicated on the line of the Jacob Martin or John Steiner. If the surveyor marked that tree as a corner, he did not return it. In my opinion that

portion of the line from a point eleven and a half rods south of where it crosses the line (running from the hemlock into the Steiner to the spruce corner), has no effect whatever upon the question of the locating of the interior lines of these surveys, and that it is of no consequence whatever.

The deputy surveyor who located the John Ferguson, a junior warrant of the fifth day of September, 1823, being thirty years after the location of the John Frey, John Steiner, and Jacob Martin, in his separate official return of his location of the John Ferguson, indicates that this line, from the spruce corner to a point south of the hemlock inside of the John Steiner survey, is a line, not of the John Steiner, but of the survey which lies north of it, or of the surveys which lie north of it; and he runs that line and returns it as though it was a line of the John Ferguson, because the location of the John Ferguson survey has a call for a spruce corner, and he locates the other corner (where there is no mark found, so far as there is any evidence here), as a sugar tree, which would be the line of the John Ferguson, and of none of the surveys that are in controversy in this particular case. From these facts, I believe that that portion of that line is no part of the John Steiner survey; that it does not start to run from the white pine; and that it cannot be made to start from the white pine, so as to have any bearing on the question of the location of the interior corner, between the John Steiner and Abram Scott, which is in dispute in this case.

It is my duty, as judge, to say that the Supreme Court have passed upon the question of how these surveys are to be located. They have laid down the method of locating that line, and it is my duty to instruct you that they have established the rule that in the location of the line between the John Steiner and Abram Scott [you are to start at the white oak corner, and run a line the official course to a point where it would be intersected by the line running from the white pine to the gum, and if, in so doing, it gives the land to the defendant, as it undoubtedly would, then your verdict would have to be in favor of the defendant upon that branch of the case,] [1] if there was nothing else in the case but that. So that we are not at liberty—it would neither be respectful, nor in the performance of our line of duty—to disregard the opinion of the

Supreme Court. It practically places, so far as the original warrants of survey are concerned, the land in dispute within the boundary of the Abram Scott survey, and therefore within the limits of the claim made by the defendant, Mr. Bloom. . . .

The plaintiff presents the following propositions:

1. That, the plaintiff having shown, and the defendant not having controverted, that the John Steiner survey and the Abram Scott, the tracts in controversy, are members of a block of sixty-four surveys, bearing the same date, and located adjoining and calling for each other, and returned the same time, 19th of April, 1794, and the purchase money paid by the same owner, their relative location upon the ground must be determined by the corners and lines of the block to which they belong.

Answer: For the purposes of this case, I deny that point. The Supreme Court have taken a different view.[2]

2. " That marks upon any part of the block belong to each part of the block." . . . . " Those found upon any part of the block belong to each and every tract of which it is comprised."

Answer: That was my belief as to the law when this case was here before, but the Supreme Court say that is not the correct principle of law; therefore, it is my duty to deny that point.[3]

3. That the white oak corner of the John Steiner survey, and the sugar-tree corner of the Matthias Slough survey, are monuments of this block of surveys.

Answer: I refuse to so instruct you, believing it to be my duty to follow the line indicated by the Supreme Court.[4]

4. That, by the official draft of this batch of surveys returned to the land office, the division between the Matthias Slough and Abram Scott surveys on the one side, and the John Steiner and John Frey surveys on the other side, is marked at the westerly end by a sugar tree, and at the easterly end by a white oak, and that the line between those monuments is a straight line; and if the jury find from the evidence (which is undisputed) that the sugar tree found upon the ground is the sugar tree called for as the corner of the Slough, and the white oak found upon the ground is the white oak corner of the Steiner, the proper boundary line between the tracts in dispute

Charge of Court below.

will be ascertained by running a straight line from one monument to the other, regardless of the official course.

Answer: I decline to say so.[5]

5. That this case is distinguished from the case of Bloom v. Ferguson, recently decided by the Supreme Court, in this, that in that ·case, the fact whether the tracts in controversy were members of a block of surveys was denied, and the evidence to establish the block was incomplete. But, in the present case, it is proved conclusively that the tracts in controversy are members of a large block of surveys, which are well located by lines and corners upon the ground.

Answer: In answer to that point, I say that it makes no difference, under the ruling of the Supreme Court, whether it was denied or not, and I refuse to affirm that point.[6]

6. If the jury believe the testimony of Messrs. Moore and McCloskey, surveyors, on the stand for the plaintiff, the white pine testified to by them as being found at the southwest corner of the Jacob Martin survey, marked as a corner and counting to the date of the survey, is the true common corner of the John Frey and John Steiner surveys, as called for on the official.

Answer: For the purposes of this case I deny that point. I do not think it is material, one way or the other, in determining the location, whether that is or is not true.[7]

7. The westerly line of the John Steiner and the Abram Scott surveys is to be ascertained by running a line from the white pine to the gum.

Answer: That line is not in dispute in this case, and that point has no application. I decline to affirm it.[8]

8. Even if the line from the hemlock of the John Frey southeasterly to and beyond the westerly line of the John Steiner, and thence northward to an intersection of the southerly line of the Jacob Martin, at a point eleven and a half perches east of the white pine corner, was run upon the ground in 1793, as claimed by defendant, it is, if the jury believe the testimony of surveyors Moore and McCloskey, of no authority in establishing the surveys in question.

Answer: I refuse to affirm that point.[9]

—The jury returned a verdict in favor of the defendant. Judgment having been entered, the plaintiff took this appeal, assigning for error:

Opinion of the Court.

1. The portion of the charge embraced in [ ] [1]

2–9. The answers to the plaintiff's points.[2 to 9]

*Mr S. R. Peale* (with him *Mr. William D. Bigler* and *Mr. Frank Fielding*), for the appellant.

Counsel cited and considered: Bloom v. Ferguson, 128 Pa. 362; Grier v. Penna. Coal Co., 128 Pa. 98; Watson v. Jones, 85 Pa. 125, 126; Pruner v. Brisbin, 98 Pa. 205; Parks v. Boynton, 98 Pa. 377.

*Mr. Thomas H. Murray* (with him *Mr. Cyrus Gordon*), for the appellee.

Distinguishing the cases cited for the plaintiff, counsel cited and distinguished, also: Bushey v. Iron Co., 136 Pa. 541; Malone v. Sallada, 48 Pa. 424, 425; Eister v. Paul, 54 Pa. 198, 199; Northumberland Coal Co. v. Clement, 95 Pa. 126.

OPINION, MR. JUSTICE WILLIAMS:

This case was here in 1889, and is reported in Bloom v. Ferguson, 128 Pa. 362. The controversy then was, as it now is, over the boundary between the Steiner and Scott surveys. The eastern terminus of this line, the white oak, the common corner of these surveys, is on the ground, but the line westerly from the white oak is not. The question presented is, how shall this line be located? Shall it be done by means of the original work on the lines of these surveys, and the returns of the deputy surveyor, or by marks made for other tracts, which were neither adopted, nor referred to in any manner, as monuments of the Steiner or the Scott, by the surveyor who located them? We held when the case was here before that the work made for and peculiar to these surveys was sufficient to locate them, and to fix the common boundary between them, and that the rules applicable to detached surveys should be applied for this purpose. It is now conceded that as the case was then presented the rule laid down was correct; but it is urged that, as now presented, a different question is raised, and a different rule should be applied. The difference contended for is that the testimony now shows that the Steiner and the Scott and their adjoiners on the west, the Frey and the Slough, are members of a block of sixty-four surveys; and for that reason

marks on the block lines should control the location of the line in controversy, notwithstanding the fact that the marks appropriate to the Steiner and the Scott are conceded to be ample for that purpose. Upon this theory, we are asked to apply what may be designated as the block system of location, in order to ascertain the boundary between two well-located tracts. In order to determine whether this should be done or not, it is desirable to inquire what the block system is, when and why it is applied, and whether the evidence in this case brings it within the operation of the rules applicable to block locations.

The public lands were sold by the state in a manner that is well known to the profession. A person desiring to buy made his " application " in writing, stating what land he wished, and as nearly as possible where it was located. On receiving this application, a warrant issued from the land office, directed to the proper deputy surveyor, authorizing and requiring him to survey and lay off for the applicant the land applied for. This was taken to the deputy, who went upon the land, made a survey of the tract in obedience to it, and then returned it, with a copy or description of the survey so made, to the land office. When this return was accepted, and the land paid for, the state made its deed, called a " patent," conveying the tract to the applicant or his vendee. When more land was desired than could be included in one tract, the person wishing to buy made applications in the names of the members of his family, his servants, and employees, as well as his own; thus securing a batch of warrants at one time, which were at once transferred to him by the nominal applicants. When this happened, the deputy surveyor would sometimes locate the entire batch of warrants in a body, as one tract, and such a body of surveys, made at one time, for one owner, was called a block. If the surveyor discharged his duty, and marked the lines of each tract, the word " block " was sometimes used to describe the body of lands held by one owner, but in such cases the location of the tracts comprising the block was made on what may be called the individual system. If only exterior lines of the block were marked, the location of the separate tracts was practicable only upon what we have called the block system.

It seems to have been at one time doubted whether a mere enclosure of a body of tracts by an exterior line was a good

Opinion of the Court.

location of the several warrants included in the block; but it was held by this court that, as between the owner of such a block and the state or a junior grantee, it was enough if the block was fairly enclosed, so as to identify the body of land appropriated to the several tracts that made up the block. But it was also held that a surveyor who had located a batch of warrants in this manner, had not discharged his official duty, and for that reason could not recover by suit the fees prescribed by law for the execution of the several warrants.    He was, however, allowed to recover upon a quantum meruit for the services actually rendered, since by means of them the owner had acquired title to the body of land enclosed by the block lines: Woods v. Ingersoll, 1 Binn. 146 ; McDowell v. Ingersoll, 5 S. & R. 101.

The next question raised upon these imperfect surveys was whether an interior tract, which was without any lines or marks of its own, could be located at all.    The opinion was entertained by some land lawyers that it could not be, and that, as in the case of a detached survey, for which no lines could be found, the land was open for another appropriation.    This court distinguished between the detached survey, without marks, and that which was in the interior of a block, holding that the latter might defend against a junior warrantee upon the outer lines of the block to which it belonged, because these showed an appropriation of all the land within them, leaving nothing that could pass under the junior warrant.    For this purpose, the marks on the block lines became a monument of the individual survey, not to fix its boundaries, but to show an appropriation of the larger body of which it was part.    In Eister v. Paul, 54 Pa. 196, the contest was between a junior warrant with lines on the ground, and a senior warrant located as part of a block.    The holder of the junior survey denied that the senior warrant had been actually executed by a survey of the land called for; and the holder of the senior warrant was driven to fall back upon the exterior lines of the block in which it was, to show an appropriation of a larger body, including his own survey.    For this purpose, it was said that the marks on any part of the block lines belong to each tract in the block ; for, by locating the body of land enclosed by them, they necessarily protect each and every part of it from a second appropriation.

In Pruner v. Brisbin, 98 Pa. 202, the plaintiff claimed under a
warrant and survey of 1859. The defendant's warrant and
survey were of 1793, and part of a block. A location of the
block on the ground was admitted, but the plaintiff contended
that the location was further south by the breadth of two tracts
than the defendant alleged it to be. If this was so, the defend-
ant's warrant, following the block to which it belonged, would
be carried two miles further south, and the land covered by
plaintiff's survey would be left open for appropriation by it.
The real question was over the location of the block, and what-
ever marks fixed that, fixed, not the tract lines of the defend-
ant's survey, but its general location as part of the block, and
so made a defence against the junior warrantee. Here, again,
it is easy to see that the marks on the exterior lines became
marks of the several tracts enclosed by them, as against a
younger survey.

The effect of a mere external enclosure was next raised be-
tween vendees of the owner of the block, holding distinct tracts.
Diagram No. 1 shows a block containing thirty tracts, having
an external enclosure, but no interior or tract lines. How are
these to be fixed? If no tract corners are marked on the block
lines, they must be run in accordance with the returns of sur-
vey. If corners are to be found on the block lines, these will
control the courses and distances given in the returns, and the
interior lines must be protracted across the block in accord-
ance with them. This is shown by diagram No. 2, in which
dotted lines show the interior or tract lines protracted from
the marks on the exterior lines of the block. If these marks
were not made upon a careful and accurate measurement of
distances, they will change the course of every tract line and
the form of every survey, as illustrated by diagram No. 2.
But in such blocks this system of location is absolutely neces-
sary to prevent a failure of title to lands which the state has
fairly sold, for which it has been fully paid, and which it has
formally conveyed by its patent resting on the preliminary ap-
plication, warrant, and return of survey. It is nevertheless a
wide departure from the established mode of making or locat-
ing surveys, and was devised to save the title of a purchaser
from being defeated by the failure of an officer to discharge
his full duty. For this reason the circumstances under which

Opinion of the Court.

it may be resorted to have been defined with some care. In Mock v. Astley, 13 S. & R. 382, it was said a foundation for its application in any given case must be laid by showing two facts: First, the existence of a block must be established "by the production of documents showing title to the whole body." This shows a grant by the commonwealth of her title to the whole body composing the block. Next, the evidence must show that the tracts composing the alleged block were located in a body without interior lines. The same question was presented in Schnable v. Doughty, 3 Pa. 392. The rule was there stated in these words: "The interior lines of a contiguous body or block of warrants need not be marked on the ground; but, unless the party claiming under one of such warrants gives evidence of the warrants covering the space within the outer lines of such block, which alone are marked on the ground, his survey must be treated as an isolated one; and, the outer lines of his survey not being found on the ground, the jury must pass upon the fact whether his particular survey was actually made." In Glass v. Gilbert, 58 Pa. 266, the question was raised in the court below and decided in conformity with the rule laid down in Schnable v. Doughty. In this court, the rule was recognized as correctly stated, but, as the contest was over the question of a sufficient external enclosure, it was said that it was not applicable to the case. Upon the authority of these cases, and upon principle, it is clear that if there are any interior lines on the ground they are of equal value with external ones, as they are equally the "foot-prints of the surveyor," made at the location of the tracts, and for interior members of the block. The general rule is that when there is work on the ground, made for and peculiar to a given tract, such work will control the location of the tract, and fix the place of its lines: Thompson v. McFarland, 6 Pa. 478; Hall v. Tanner, 4 Pa. 247; Cox v. Couch, 8 Pa. 147; Younkin v. Cowan, 34 Pa. 198; Malone v. Sallada, 48 Pa. 419; Grier v. Coal Co., 128 Pa. 79. If these marks leave a line or parts of lines without any monument on them to fix their place on the ground, the return of survey is to be resorted to, for the law presumes conclusively, after twenty-one years, that the lines were run by the surveyor as he has returned them into the land office: Lambourn v. Hartswick, 13 S. & R. 113; Caul v.

Spring, 2 W. 390 ; Nieman v. Ward, 1 W. & S. 68 ; Collins v. Barclay, 7 Pa. 67; Ormsby v. Ihmsen, 34 Pa. 462; Grier v. Coal Co., supra. When, therefore, the work of the surveyor, made for the particular tract, is found on the ground sufficient to identify the tract, the legal presumption attaches to the work so found, and resting upon it protracts the remaining lines or parts of lines along the official courses, and completes the enclosure : Wharton v. Garvin, 34 Pa. 340; Bellas v. Cleaver, 40 Pa. 260 ; Packer v. M. & M. Co., 97 Pa. 379.

We have thus two systems for ascertaining the proper location of a survey ; the natural and general one, which rests on such of the original marks made for the tract as can be found, and on the legal presumption arising from the return of survey as to such as cannot be found ; and the block system, which is applicable where no internal lines were run, and where, therefore, no marks exist to guide in the location of internal tracts or lines, except such as may be found on the exterior of the block.

Turning now to the case before us, we have a question of boundary between, not two interior tracts without lines, but two well-located surveys. The work that is still found on the Steiner and the Scott is shown by diagram No. 3. The two tracts are practically enclosed by that work, although a part of the western line is not on the ground. What remains to complete the enclosure of both is to separate them by a line running westerly from the white oak, a common corner, thoroughly identified. As there are no marks on this line to override the return of survey, it must be run from the white oak, according to its official course, to an intersection with the west line. Diagram No. 4 shows the original work on the Slough and the Frey. These are practically enclosed by their own established lines and corners. They are returned as adjoining the Steiner and the Scott. Their eastern line is open, but its place is fixed by the work on the ground. Diagram No. 5 places the Slough and the Frey in their proper positions adjoining the Steiner and the Scott, and shows that they do not adjoin as they were returned. It also shows the work on the Steiner that is peculiar to that tract. Now, it is clear that no one of these four tracts can be located by the marks on the lines of the block of sixty-four surveys to which they belong,

Opinion of the Court.

**No. 3.**

Grant. | Gum. | Scott. | W.O. | Steiner. | Hickory | W.Pine | Martin.

**No. 4.**

Rose. | Dogwood. | Gum. | Slough. | Sugar. | Frey. | Hemlock.

**No. 5.**

Ross | Slough. | Sugar. | Frey. | Gum. | Grant. | Scott. | W.O. | Steiner. | W.Pine | Hickory. | Martin.

**No. 6.**

Gilvs. | Bartom. | Hemlock. | Turner | Drissler. | Cucumber. | J. Ross. | G. Ross. | Dogwood. | Hambright | Slough. | Sugar. | Burk. | Frey. | Hemlock.

because (*a*) the lines of the block are not before us; (*b*) the "documents showing title" out of the commonwealth to all the members of the block are not before us; (*c*) the evidence shows the existence of original interior lines running through the block in both directions; (*d*) the tracts in question are absolutely located by marks upon the ground, made for and peculiar to them.

But it may be said these four tracts should be considered as forming a subordinate or interior block, carved out of the large one, and entitled to the application of the same principles for the adjustment of its interior lines as the large one might be. Without entering into the discussion of the question thus suggested, it cannot be doubted that if a subdivision of a block asserts its right to be treated as a block, it must take that right subject to the limitations which are applicable to a block, and must make the same preliminary proofs. It must appear that the lines on the ground were run to inclose the sub-block as a block, and that the individual tracts are without lines of their own, or that are peculiar to them, by which they may be located as separate surveys. If now we look at diagram No. 3, it will be seen that the Steiner is well located by work that is peculiar to it. Beginning at the white oak, we have an original corner. An original line runs along its eastern side to its northeasterly corner, which is identified. Thence a marked line fixes its northern boundary to the northwesterly corner. Thence a well-marked line of the proper date marks its western boundary for half or two thirds the breadth of the tract. Three lines and three corners of this tract are on the ground, by which the fourth line and corner are readily ascertainable, and by which their position is fixed with certainty. The tract needs no aid from the work of any other tract or from any line of the alleged sub-block, but, standing on what is unquestionably its own monuments, can hold its location, and every part of it, against all comers. But it is urged that, inasmuch as the returns of survey make the Frey adjoin the Steiner, and the Slough adjoin the Scott, along the entire western side of each, and give to the four tracts a common interior corner at a post, they must be so located as to have a common corner. This is giving more weight to a call for a post that it is admitted was never on the ground than to the work which locates

the Steiner and the Scott and to the legal presumption together. Then, too, the marks on the ground contradict the return as to the relative position of these surveys. The marks show unmistakably that the Scott is one half mile longer than the Slough, and that the northern boundary of the Steiner is a half mile farther north than the Frey. The returns of survey show the south lines of the Frey and the Steiner to be parallel with the north lines, and both the south and north lines to be continuous. The work on the ground shows the north line is not a continuous line, but that the Steiner is pushed a half mile beyond the Frey, with well-marked lines all the way around the projecting part of it. The presumption that lines returned as parallel are so, must prevail, unless it is overcome by marks on the ground. There is no mark on the south line of the Steiner, to deflect it from its official direction and its proper relation to the other lines of the tract. The presumption ought, therefore, to prevail. Moreover, the rectangular form of the tract will always be preserved, when this is practicable: Massie v. Watts, 6 Cranch 148. Locating the Steiner by its own work, we not only have regard to the legal presumption that the lines returned as parallel are so, but we preserve the rectangular form of the tract, and of its adjoiner, the Scott. Treating the Frey and the Slough, in the same manner, that is, locating them by their own work, and by the aid of the presumptions to which we have referred, we make their lines parallel, and the figure of each rectangular.

The learned counsel for the appellant contends that the four tracts must have a common corner, because the returns call for one, although it is conceded that it was never on the ground. To locate this he would run a diagonal line from the white oak to the sugar, and where this line intersects the line southerly from the work on the west line of the Steiner to the gum, he would plant a post for the common corner. This location would answer one call of the returns of survey, viz., the call for a common corner. It would disregard the return as to the form of each of the four tracts, as to the north and south line of each being parallel, and as to the official course of the line westerly from the white oak, and that easterly from the sugar. As between two proposed methods of location, where the work on the ground will permit, that should be preferred which fills

the largest number of the calls of the return of survey. Not only is the diagonal line thus left without support upon the returns alone, but, as we have already seen, the work on the ground contradicts and overrides the return as to the manner in which these tracts adjoin each other, and pushes all the work pertaining to the easterly pair one half mile farther north than that which pertains to the westerly pair. In other words, the returns of survey are shown by the work on the ground to be mistaken as to the manner in which these tracts adjoin. The fact, as demonstrated by the actual work of the surveyor, is that the Steiner adjoins the Frey only about one half the breadth of the latter, and then for a half mile adjoins another member of the same general block, having well-marked lines of its own from the time it leaves the Frey, around three of its sides to the white oak, as shown in diagram No. 5.

To recapitulate; the argument in favor of treating these four tracts as a block rests on the return of survey, which makes them adjoin along the entire breadth of each, and gives them a common corner at the post. This return is, however, discredited by the work on the ground, which shows that they do not adjoin as the return indicates, and that they cannot have a common corner without doing violence to the courses of the division lines, to the relation of these lines to those north and south of them, and to the form of all the tracts. The argument against treating them as a block may be stated thus: (1) There is no proof that they were located as a block. (2) The work on the ground shows that the Steiner has marks peculiar to itself, not common to or in any manner affecting the location of the Frey or the Slough. (3) The Steiner is well located, one half mile northerly of its returned location, by marks which, as between it and the Frey, are peculiar to it, and are inconsistent with the assumed block location. (4) The individual location not only gives effect to the work on the ground, but to a majority of the official calls in the returns of survey.

So much importance is attached by the appellant to the sugar, the common corner of the Slough and the Frey, that it may be desirable to consider briefly its position and significance. It is conceded that it is not called for by, or referred to in the return of survey of either the Steiner or the Scott. If it is a monument of the Steiner therefore, it must be made so by the

fact that the line in which it stands was run as an exterior line of a block of which the Steiner is a member, and for the purpose of locating its lines. But the testimony of the surveyors shows that the line in which it stands extends across the large block of over sixty tracts, and was run to subdivide that block, and fix upon the ground two corners of each tract abutting on it on the east and on the west. The sugar is therefore the common corner of four tracts, as shown in diagram No. 6, viz., the Frey and the Slough on the east, and the Burke and the Hambright on the west. Such subdivision lines might be so run as to divide the large block into several small ones, having only exterior lines. If regard was had to the returns of survey only, it might be contended, in accordance with the position of the appellant, that the Steiner was a member of such an interior or sub-block; but, as we have seen, the work on the ground is inconsistent with such a contention. The Steiner has two western adjoiners, as shown on diagram No. 5, with an original line on its west side. Its north line is not part of a long line enclosing or helping to enclose other tracts. Its west line is not an open one, to be fixed in the subdivision of a block by lines resting on monuments in the block lines. The line in which the sugar stands has no connection with the north line of the Steiner, which stops one tract short of it; none with the west line, which is parallel with it; none with the east line, which has the Steiner, the Martin, and other tracts, with an intermediate tract line between that and it. It is very clear, therefore, that the Steiner is no part of a block to which the Frey belongs. If the returns of survey would present that appearance, the work on the ground shows that the returns are mistaken.

The rules pertaining to block locations are resorted to where an individual location cannot be shown, to fix the lines and save the location of a tract; not to change the lines or distort the figure of a tract well located as an individual or separate survey. If, therefore, marks of the original survey are found, as in this case, on three sides of a tract, and some of these marks are peculiar to the tract, and are not common to the other tracts alleged to form part of the block, an individual or separate location is established. The position of an unmarked corner or an open line will be fixed by the aid of the legal presumption that

Statement of Facts.

the lines were run as returned. This presumption, resting on the work found, will protract the lines, and enclose the tract as an individual location. Both methods of location cannot be resorted to at the same time. If the tract is part of a block, it must be so located, and can be located in no other way. If it is a separate survey, it must be located by its own monuments, aided, if need be, by the legal presumption. We think the Steiner is well located as a separate survey by its work on the ground, part of which is peculiar to it, and is not connected with the exterior lines of the alleged block or with the lines of any member of it.

The assignments of error are not sustained, and

The judgment is affirmed.