————————o————————

Nos. 6294-6309.

## JULIUS C. WOLF CO. vs. FITZPATRICK & CO.

### Syllabus.

The purchaser sued for the price of sale of movables is always in time to claim a reduction of the price for latent defects in the thing sold.

A purchaser who buys goods in such a manner as to lead the vendor to believe that he will pay for them in cash will not

be allowed afterwards to set up the price he owes in compensation of a debt due to him by his vendor.

Compensation will not take place when the claim urged by the defendant against that of plaintiff is not equally liquidated and demandable.

The judgment on the main demand is reversed, and that on the demand in compensation is affirmed and amended.

Appeal from the Civil District Court for the Parish of Orleans, Division "D," No. 105,070. Honorable Porter Parker, Judge.

Chas. Rosen, for plaintiff and appellant.

K. V. Richard, for defendant and appellee.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

Plaintiff sues the defendant for $1786.65 with interest from judicial demand for merchandise sold and delivered according to an annexed and itemized bill.

Defendants admit the purchase of the goods set forth in the petition, but aver that they are entitled to a credit for a part of said goods not delivered, and for "whisk-brooms and batenburg" very much damaged and not worth more than 50 per cent of the amount charged in the invoice, all of which shortage and damage to goods aggregate the sum of $514.46, leaving a balance due (by) your respondents to plaintiff in the sum of $1,212.19."

Harry W. Fitzpatrick testifies that the shortage was about $30. Plaintiff admits that amount to avoid a controversy.

The amount claimed by plaintiff for the whisk-brooms is $257.18. Fitzpatrick says that "they were not properly manufactured, according to my idea of how they should be made. The wires were badly wrapped, and the

— 195 —

straws would come out." He has sold about 75 per cent of them and the rest are unsalable. This would mean a loss of 25 per cent, or about $64.29.

We will allow the claim because 'the brooms were wrapped in bales and the defects were latent. **C. C.**, 2520 (2496); 46 A., 360.

The evidence concerning the battenburgs is too vague to establish a claim.

The plaintiff is therefore entitled to a judgment for $1,692.36 with legal interest from June 28th, 1913 till paid.

The defendants, however, set up in compensation a demand against the plaintiff for $1212.19 balance claimed by them on the following contract, viz:

"This agreement entered into and herewith signed in duplicate this 10th day of April, 1909, between Harry H. Fitzpatrick and Julius C. Wolff and Company, same being made for the express purpose of handling and selling 53 cases of furniture and silk goods hereafter referred to.

"It is agreed that the said 53 cases of furniture and silk goods now in the warehouse are to be released from warehouse by making entry and paying duties and freight on same, and this merchandise is to be hauled to 227-229 Baronne Street, and there put on sale at retail for the present. The rent of this building is not to exceed $150 per month, and we are to employ one person to take charge of this place, at a salary not exceeding $15.00 per week, who is to be mutually agreed upon, and, if necessary, a porter at a nominal salary. Should it be decided at a later date to change the * * * and offer these goods for sale at auction or move them to another place * * * this can be done by consent of both parties. After this merchandise * * * open * * * and * * * to be made showing an exact record of said merchandise, and a

price * * said book by the side of each respective article, which will designate the lowest possible price that this respective piece of merchandise is to be sold. Any alterations of this price are only to be made by mutual consent, which consent is to be affixed with signatures of both parties. A balance amounting to $1,646.11 still due on this transaction to Julius C. Wolff & Co. by the parties to this agreement, is to be paid jointly, and is to be liquidated from the moneys received from the sale of this merchandise. It is further agreed that 50 per cent of all sales of this merchandise is to be set aside for the liquidation of the balance due until sufficient goods have been sold, and an amount realized to pay same. This amount set aside is to be subject to the call of Julius C. Wolff & Company, and it is understood is to be paid to them as moneys accumulated for this specific purpose. No merchandise other than this one shipment in question is to be offered for sale at the establishment above enumerated, unless by mutual agreement in writing, except a few pieces of curios owned by Harry H. Fitzpatrick, * * * sale of these is to be equallly divided between the parties of this agreement. Insurance is to be carried in the name of Harry H. Fitzpatrick, and Julius C. Wolff & Company, jointly, for an amount to fully insure this merchandise, the expense of which is to be borne jointly. * * * All funds received for the sale of this merchandise are to be deposited in a bank to be mutually agreed upon and to be disbursed only by check signed * * *.''

"It is further expressly agreed and understood that * * * understanding or disagreement arise between either of the parties of this agreement, or should the sale of this merchandise not be a success, Harry H. Fitzpatrick is to pay unto Julius C. Wolff & Company $823.05—same being one-half of the balance of the amount due on this transaction to the said Julius C. Wolff & Company by the parties of

— 197 —

this agreement, and said Harry H. Fitzpatrick shall take possession of one-half of the merchandise; the other half remaining the property of Julius C. Wolff & Company. By one-half of the merchandise is meant one-half as to the values as determined by the cost book, and in case of a disagreement as to which prices are to be had by either party, this is to be done by each party of this agreement appointing an arbitrator, and if they cannot agree, in turn appointing a third person to designate which pieces are to be taken by each party, but in no case is one party to receive in value at cost more than the other.

(Signed) "Julius C. Wolff & Co.
"Harry W. Fitzpatrick."

This agreement was signed on or about April 10th, 1909.

The Civil Code provides:

**C. C., 2207 (2203):**

"When two persons are indebted to each other, there takes place between them a compensation that extinguishes both the debts in the manner and cases hereafter expressed."

**C. C., 2209 (2205):**

"Compensation takes place only between two debts, having equally for their object a sum of money, or a certain sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable."

There are two reasons why this demand in compensation cannot be entertained.

1st. It is evident that the two debts are not "equally liquidated and demandable." Plaintiff's claim is an open account, acknowledged by defendant. Defendant's

claim is not admitted and results from a joint venture in the nature of a partnership in which the rights of the parties can be ascertained only after an acounting or a liquidation of the partnership. It would seem by the agreement that "should the sale of this merchandise not be a success Fitzpatrick was to pay $823.05 and take one-half of the merchandise." It might be that Fitzpatrick might have other claims against his partner or against the partnership, but these are too uncertain to be compensated against plaintiff's claim, and must be previously liquidated. One partner cannot sue his partner for money advanced to the partnership.

> 2 H. D., p. 1093, IV. (V) No. 1 & al 22 A., 428, (430); 23 A., 49; 14 A., 636, (638); 7 La., 562; 7 N. S., 517.

2nd. It appears that when the defendants, Fitzpatrick & Co., purchased the merchandise, the price of which is claimed in this suit, they attempted to credit the price to the amount claimed by them from Julius C. Wolff & Co. This was refused, and Fitzpatrick & Co., purchased with the understanding that they were to pay for the goods. They were informed that these goods had been pledged to the Hibernia Bank. 6 A., 46; 28 A., 627; 35 A., 1129. Under these circumstances they cannot set up their claim in compensation.

It is, therefore, ordered that the judgment of the District Court in favor of the defendants, Fitzpatrick & Company, be reversed, annulled and avoided; and it is now ordered that there be judgment in favor of the plaintiff, Julius C. Wolff Company, and against the defendant, Fitzpatrick and Company, and the individual members thereof, William H. Fitzpatrick and Harry W. Fitzpatrick, **in solido** for the sum of one thousand six hundred

and ninety-two 36/100 dollars with five per cent per annum interest from June 28th, 1913, till paid and all costs of suit.

It is further ordered that the demand in compensation of said defendants, Fitzpatrick and Company, be dismissed at their cost as in case of nonsuit, reserving their rights, if any, against Julius C. Wolff and Company and against the plaintiff, Julius C. Wolff Company.

The judgment on the main demand is reversed and that on the demand in compensation is affirmed and amended.

Opinion and decree, February 17th, 1915.

## Application for Rehearing.

### Syllabus.

A creditor of the individual members of a partnership cannot compensate his claim against the debt due by him to the partnership.

Parole evidence is not admissible to prove that a new partnership has promised to pay the debt of a former one.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

The petition for rehearing and the brief in support thereof have not satisfied us that our opinion and decree herein were erroneous.

A further consideration of the matter suggests to us another reason why the judgment should remain unchanged.

"Julius C. Wolff & Co." was dissolved and was succeeded by "Julius C. Wolf Co.," a new member was added to form a distinct and separate company.

The defendant is the debtor of the latter company and the creditor of the former company. He cannot compensate his claim against the former company by the claim of the latter company against him, because there is no written evidence that the latter company has assumed to pay his debt.

In the case of **Abat & Generes vs. Penny, 19 A., 289 (290)** the Court said:

> "The evidence shows that one, A. Testrou, became a partner, and made the company; from that moment the old firm was changed and became a new one, with different parties, interest and liabilities; the creditors and debtors of the old firm, were not so of the new firm, and vice versa. It was two different houses in contemplation of law; creditors of the old firm could not have pleaded compensation against a debt due the new firm.
>
> "It is a well established principle of our jurisprudence that the addition of a new member to a commercial partnership creates a new firm with distinct rights and liabilities, and that the latter is not responsible for debts of the former partnership, unless it has made itself so. Verbal evidence is not admissible to prove that the new partnership has promised to pay a debt of the former, which is clearly a third party."
>> **32 A., 382.**

Rehearing refused.

Rehearing refused, March 29, 1915.

Writ denied, May 17, 1915.

St. Paul, J.,—I concur in the decree.